**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK T. LAVERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25 C 14184 |
| | ) | |
| KALSHI INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Mark Lavery has sued Kalshi Inc. for statutory penalties under laws adopted in Illinois, Ohio, Kentucky, and Massachusetts that permit a third party to recover losses related to certain illegal gambling transactions. Kalshi has moved to dismiss. For the reasons stated below, the Court dismisses Lavery's complaint for lack of personal jurisdiction and failure to state a claim.

**Background**

At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018).

Lavery is a resident of Illinois who, his complaint says, "has a history of using laws derived from the Statute of Anne," an eighteenth-century English law, to collect "bounties" from gambling winners. Compl. ¶ 7. In this case, Lavery asserts claims under loss recovery statutes enacted in Illinois, Ohio, Kentucky, and Massachusetts. As

relevant here, these statutes allow third parties to recover from the winner certain losses suffered by another person through illegal gambling transactions.  720 Ill. Comp. Stat. 5/28, Ohio Rev. Code § 3763.02, Ky. Rev. Stat. § 372.020, Mass. Gen. Laws Ch. 137 § 1.  The Illinois loss statute covers any loss over $50, and the Kentucky statute covers any loss over $5.  720 Ill. Comp. Stat. 5/28-8; Ky. Rev. Stat. § 372.020.  Ohio and Massachusetts do not require a minimum loss amount.  Ohio Rev. Code § 3763.02; Mass. Gen. Laws Ch. 137 § 1.  In Illinois, Ohio, and Kentucky, a third party may bring suit if the individual who suffered the loss has not done so within six months.  720 Ill. Comp. Stat. 5/28-8; Ohio Rev. Code § 3763.04; Ky. Rev. Stat. § 372.040.  In Massachusetts, a third party may bring suit after only three months.  Mass. Gen. Laws Ch. 137 § 1.

Kalshi[1] operates what Lavery characterizes as "an online wagering market using real money on contingent outcomes."  Compl. ¶ 42.  Kalshi permits wagering on its online wagering market in Illinois, Ohio, Massachusetts, and Kentucky but is not licensed to operate gambling in those states.  Lavery alleges that Adhi Rajaprabhakaran is a gambler who has lost thousands of dollars in the Kalshi gambling hall but has never sued Kalshi to recover losses.  Adhi worked at Kalshi but left to become a writer. Lavery also alleges that other unknown and unnamed gamblers placed unspecified wagers with Kalshi and did not file suit to recover their losses.  Kalshi profits from the net transfer of value to it from losing customers.  Lavery contends that Kalshi is thus a

---

[1] Kalshi Inc. has submitted a declaration that states that it is a holding company and the parent company of KalshiEX LLC.  Def.'s Mot., Ex. A at ¶¶ 4–5. The declaration further states that KalshiEX is a financial services company that operates a derivatives exchange and prediction market where users can buy and sell financial products known as "events contracts."  *Id.* at ¶ 7.

gambling winner liable to him for the losses incurred by a gambling loser, Adhi, as well as the losses of other unnamed persons. Lavery asserts that he, a third party, may bring this lawsuit because Adhi has failed to do so within the required period.

Kalshi has moved to dismiss Lavery's claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Rule 12(b)(6). The Court concludes that personal jurisdiction is lacking and that, even if it exists, Lavery has failed to state a viable claim.

## Discussion

### A.      Rule 12(b)(2)

"A complaint need not include facts alleging personal jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (cleaned up). Once a defendant moves to dismiss under Rule 12(b)(2), however, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Id.* When ruling based on written materials alone, without the benefit of an evidentiary hearing, the plaintiff is required only to make out a *prima facie* case of personal jurisdiction. *Id.* In determining whether a *prima facie* case has been established, the Court "take[s] the plaintiff's asserted facts as true and resolve[s] any factual disputes in its favor." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022) (quoting *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010)). A court may also consider affidavits on the issue of personal jurisdiction. *Id.* "[B]oth parties' affidavits are accepted as true, and where they conflict, the plaintiff is entitled to resolution in its favor." *Id.*

A court may have either general or specific personal jurisdiction over a party. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General

jurisdiction exists "only when a defendant is 'essentially at home' in the State." *Id.* (citation omitted). Specific jurisdiction, on the other hand, requires the defendant to "take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* at 359 (cleaned up). As the Seventh Circuit has stated:

> Specific personal jurisdiction requires that (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021).

Illinois's long-arm statute includes a catchall provision stating that a court "may . . . exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Because Illinois's long-arm statute is co-extensive with the limits of due process, the Court must find that the defendant has established minimum contacts with the forum such that it may be haled into court in this forum. "The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984)).

Lavery does not argue that Kalshi is subject to general jurisdiction. Therefore, the Court will address only whether the Court has specific jurisdiction over Kalshi.

Kalshi says that it is a holding company and not the proper defendant in this action. As for KalshiEX, Kalshi argues that "the issue of whether personal jurisdiction would exist over KalshiEX is moot" because Lavely did not amend his complaint to

4

include KalshiEX as a defendant. Def.'s Reply at 6. But in appropriate circumstances, Kalshi may be subject to jurisdiction in Illinois based on KalshiEX's contacts with Illinois.

The general rule is that "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 n. 17 (7th Cir. 2003). Illinois state law treats "a parent corporation as a separate legal entity from a wholly owned subsidiary, even where the two entities have mutual dealings." *Old Orchard Urban Ltd. P'ship v. Harry Rosen, Inc.*, 389 Ill. App. 3d 58, 69-70, 904 N.E.2d 1050, 1061 (2009). There is an exception to this general rule, however, if a parent has "an unusually high degree of control" over a subsidiary or the parent's "subsidiary's corporate existence is simply a formality." *Abelesz v. OTP Bank*, 692 F.3d 638, 658-59 (7th Cir. 2012) (internal quotation marks omitted); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). Under these circumstances, a court may impute a subsidiary's contacts to the parent to establish specific jurisdiction over the parent. *See Abelesz*, 692 F.3d at 658-59; *see also Old Orchard*, 389 Ill. App. 3d at 70, 904 N.E.2d at 1061.

A parent of a wholly owned subsidiary "necessarily control[s], direct[s], and supervise[s] the [subsidiary] to some extent." *Abelesz*, 692 F.3d at 659 (internal quotation marks omitted) (citing *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998)). But that by itself is not enough to permit the subsidiary's contacts to be attributed to the parent for purposes of personal jurisdiction. Instead, a court considers the following factors in determining whether a parent corporation exerts the "unusually high degree of control" needed under the governing standard:

> (1) the degree of control exercised by the parent over the subsidiary, (2) the obligations of the subsidiary to service the parent's products, (3) inclusion

5

of the subsidiary's name and address in the parent's advertising, (4) joint sponsorship of promotional activities, (5) interlocking directorships, (6) location of the meetings of the subsidiary's board of directors, and (7) whether the subsidiary is authorized to prosecute trademark infringement suits in the parent's name.

*Palen v. Daewoo Motor Co.*, 358 Ill. App. 3d 649, 661, 832 N.E.2d 173, 184 (2005) (internal quotation marks omitted).

The following is a summary of the key points cited by Lavery in support of attributing KalshiEX's Illinois contacts to Kalshi. KalshiEX appears to operate under the name "Kalshi" without drawing any distinction between it and Kalshi Inc. Kalshi appoints the directors to KalshiEX's Board and may remove a director in its sole discretion. Pl.'s Mot. for Discovery, Ex. 1 at 3. Kalshi's CEO is also the CEO of KalshiEX. *Id.* at 9. Kalshi must approve a number of activities before KalshiEX can engage in them, including any material change to the nature of KalshiEX's business and hiring, terminating, or changing the compensation of any of KalshiEX's executive officers. *Id.* at 2–3. Kalshi Inc. also appeared before the Illinois legislature and provided testimony on behalf of KalshiEX regarding legislation. Pl.'s Mot. for Discovery, Ex. 13. Kalshi's privacy policy for individuals using its website states that the policy outlines how "KalshiEX LLC and its parent, subsidiaries, or affiliates (collectively, the 'Exchange,' 'Kalshi," 'we,' 'our,' or 'us') process the information we collect about you . . . ." Pl.'s Mot. for Discovery, Ex. 8 at 1. The public trademark application submitted by Kalshi Inc. for the mark "KALSHI: TRADE THE FUTURE" describes goods and services that include software for financial exchanges, clearing, and electronic financial trading services. Pl.'s Mot. for Discovery, Ex. 12.

Lavery has cited no case with a similar fact pattern holding that this is enough to

6

attribute a subsidiary's in-state contacts to its parent for jurisdictional purposes. The Court is doubtful that the facts cited by Lavery are sufficient in this regard. But even if they are, Lavery has not shown that KalshiEX's Illinois contacts are sufficient to subject Kalshi Inc. to personal jurisdiction here. First, the only actual "betting" referenced in Lavery's complaint was done by Adhi, but Lavery does not contend that Adhi interacted with KalshiEX in Illinois. Instead, Lavery alleges only that KalshiEX's platform was available for use in Illinois. Kalshi argues that this is not enough, and for support it points to the Seventh Circuit's decision in *Advanced Tactical Ordinance Systems, LLC v. Real Action Paintball, Inc.*,751 F.3d 796, 803 (7th Cir. 2014). In *Advanced Tactical*, the Seventh Circuit held that the defendant's maintenance of an interactive website that was accessible in Indiana was not sufficient to establish personal jurisdiction. *Id.* Kalshi is correct that "merely operating a website, even a highly interactive website, that is accessible from, but does not target, the forum state is not enough to sustain jurisdiction." *Liu v. Monthly*, 170 F.4th 1090, 1093 (7th Cir. 2026). That, effectively, is all that Lavery has alleged here.

In *Liu*, the Seventh Circuit held that the district court erred in finding the defendants were subject to specific personal jurisdiction when the plaintiff had not shown that Illinois residents purchased products from the defendants' e-commerce stores. *Id.* The court explained that it was not sufficient for the plaintiff to assert that the infringing products "were offered for sale to residents of the United States, including Illinois residents[.]" *Id.* at 1094. Instead, the plaintiff was required to show actual sales in Illinois. *Id.*

The Court does not see a meaningful basis for a different analysis here. Lavery

7

alleges that Kalshi "conducts continuous gambling operations accessible to Illinois residents" and "chooses not to geofence Illinois, thereby directing wagering transactions in this District[.]"  Compl. ¶¶ 4–5.  He also contends that Kalshi "made its platform available" in Illinois and that "users placed wagers through the platform".  Pl.'s Resp. at 15.  In sum, Lavery alleges that KalshiEX's DCM platform was *available in* Illinois, but he does not allege or present any evidence that transactions on the platform *occurred in* Illinois.  Under *Liu*, it is insufficient for Lavery to assert that the DCM platform was offered or made available to Illinois residents.  But Lavery does not allege any more than that here.  The bottom line is that Lavery has not persuasively argued that KalshiEX's platform, though available for use by Illinois residents, should be treated differently from the online stores at issue in *Liu*.

The only other evidence that Lavery points to regarding contacts by KalshiEX with Illinois involves the written testimony of Kalshi Inc., on behalf of KalshiEX, to the Illinois Senate Subcommittee on Gaming, Wagering, and Racing dated April 6, 2026.  Pl.'s Mot. for Discovery, Ex. 13.  This testimony broadly addresses the regulation of prediction markets in Illinois and opposes proposed legislation.  *Id.*  It does not include evidence of any actual transactions with Illinois residents.  And the testimony itself is unrelated to the betting or trading that gives rise to Lavery's claim here.  Thus this contact is effectively irrelevant for jurisdictional purposes.

Lavery has made a motion for jurisdictional discovery, but he does not seek discovery related to KalshiEX's DCM platform transactions in Illinois.[2]  Still, the Court

---

[2] Lavery's jurisdictional discovery requests all relate to the relationship between Kalshi Inc and KalshiEX.  *See* Pl.'s Mot. for Discovery at 11–13.

addresses the issue based on Lavery's statement—made in response to Kalshi's Rule 12(b)(6) arguments—that specific transaction information may be obtained through discovery. Pl.'s Resp. at 12. "A plaintiff must be able to establish a colorable or *prima facie* showing of personal jurisdiction before discovery should be permitted." *In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022). "Although the standard to obtain jurisdictional discovery is low, courts will not permit discovery based only upon bare, attenuated, or unsupported assertions of personal jurisdiction[.]" *Gilman Opco LLC v. Lanman Oil Co.*, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014) (St. Eve, J.). As discussed, Lavery offers only that the DCM platform was available in Illinois. That is insufficient to support a colorable or *prima facie* showing of personal jurisdiction. The Court therefore overrules Lavery's motion for jurisdictional discovery. More broadly, the Court concludes that Kalshi is entitled to dismissal for lack of personal jurisdiction.

**B.      Rule 12(b)(6)**

Even if Lavery were able to establish jurisdiction over Kalshi, he has failed to state a claim under the loss recovery statutes of Illinois, Ohio, Kentucky, and Massachusetts.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *NewSpin*, 910 F.3d at 299 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.* In ruling on a Rule 12(b)(6) motion to dismiss, a court is limited to assessing the allegations in the complaint, documents attached to the complaint, documents that are

9

critical to the complaint and referred to in it, and information subject to proper judicial notice. *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 498 (7th Cir. 2025).

Kalshi argues that the "complaint offers no basis to apply the statutes of Illinois, Ohio, Kentucky, or Massachusetts to the alleged conduct at issue." Def.'s Mot. at 13. Lavery responds that the relevant statutes apply to his claims because he alleges that Adhi placed wagers on Kalshi's platform and incurred losses exceeding the statutory thresholds and that Kalshi made its platform available to users in the relevant states. He also argues that the loss recovery statutes in each state are intended to deter illegal gambling and thus it does not matter where the recovery goes.

Ordinarily, state statutes apply only to conduct that occurs within the state's borders. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184, 835 N.E.2d 801 (2005) (statutes do not apply outside the state unless expressed clearly in the statute); *Union Underwear Co. v. Barnhart*, 50 S.W.3d 188, 190 (Ky. 2001) (same); *Harris v. Vision Energy, LLC*, 2024-Ohio-2878, ¶ 19, 250 N.E.3d 208, 217 (same); *Com. v. Miller*, No. 0177 CR 1169-001, 2002 WL 1489613, at *5 (Mass. Super. July 9, 2002) (same).

The relevant statutes do not include any language that would support extraterritorial application. Lavery appears to agree that the statutes do not apply to "wholly out-of-state conduct." Pl.'s Resp at 15. Lavery even acknowledges that "the relevant conduct occurs where the user is located when placing wagers and incurring losses." *Id.* at 16.

Faced with this limitation, Lavery instead argues that he is not required to plead "transaction-level geographic detail at the outset of the case." *Id*. Lavery points to his allegations that that Kalshi "made its platform available" in Illinois, Ohio, Kentucky, and

10

Massachusetts, "that users placed wagers through the platform," and "those wagers resulted in losses exceeding statutory thresholds." *Id.* These allegations, according to Lavery, sufficiently "allege that the conduct at issue occurred within the jurisdictions whose statutes [he] invokes." *Id.*

The problem, however, is that Lavery does not allege that Adhi, or any other user, was located in Illinois, Ohio, Kentucky, or Massachusetts when he placed a losing trade or wager with Kalshi that forms a basis for a claim under any of the cited statutes. Because Lavery's allegations fail to make any connection between the transactions that form the basis for the lawsuit and the relevant states, the Court concludes that he fails to state a claim under the relevant statutes. *See Brockett v. Effingham County*, 116 F.4th 680, 685 (7th Cir. 2024) (a plaintiff's allegations must "raise a right to relief above the speculative level") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Kalshi also argues that Lavery does not state a claim because he fails to allege the amount of the losses and when Adhi's losses occurred. Lavery responds that he is not required to plead Adhi's claim with "granular specificity." Pl.'s Resp. at 11.

Lavery contends that the Illinois Supreme Court "recognized that practical difficulties in identifying participants—particularly in internet-based wagering—do not limit the statute's reach, reach, and that discovery may be used to obtain identifying information where necessary." *Id*. at 12 (citing *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 17, 178 N.E.3d 1034, 1038). In *Dew-Becker,* the plaintiff alleged the screen name—but not the real name—of the individual on the other side of an allegedly illegal gambling transaction. *Dew-Becker*, 2020 IL 124472, ¶ 17, 178 N.E.3d at 1038. In that context, the court explained that if the defendant's real name is unknown, pleading his or her

11

screen name is sufficient because discovery can be used to obtain the person's real name. *Id.* at ¶ 16, 178 N.E.3d at 1038. The case does not support allowing a claim to proceed based on conclusory allegations that unknown users were involved in illegal gambling transactions of unknown amounts on unknown dates.

Lavery also relies on *Lawson v. Iaderosa*, 2020 IL App (3d) 180609, 148 N.E.3d 844, and *Commonwealth ex rel. Brown v. Stars Interactive Holdings, Ltd.,* 617 S.W.3d 792 (Ky. 2020). In *Lawson*, the plaintiff alleged her son lost certain amounts on certain dates in allegedly illegal gambling transactions that involved the defendants. *Lawson*, 2020 IL App (3d) at ¶ 5, 148 N.E.3d at 845. In *Brown*, the court explained that the state could file one lawsuit "in which all the losses are aggregated without pleading specific facts about particular losses." *Brown*, 617 S.W.3d at 809. The court did not hold that a plaintiff sufficiently pleads a claim when he fails to plead when the allegedly illegal transactions occurred or the amount of the aggregated losses. *Id.* at 809–10.

Although "granular specificity" is not required, Lavery must allege the basic facts regarding the allegedly illegal transaction to sufficiently plead a claim under each of the state statutes. These facts include the amount lost to ensure that the statutory minimum loss is met in Illinois and Kentucky, as well as the date of relevant transactions to ensure that he is entitled to bring a third-party claim in each state. Lavery's allegations in support of Adhi's allegedly illegal transactions boil down to the following statements: (1) "Every wager placed with Kalshi constitutes an illegal gambling loss within that state," (2) "Adhi Rajaprabhakaran placed numerous Kalshi wagers and incurred multiple losses above the statutory thresholds," and (3) "Adhi did not sue within the statutory periods." Compl. ¶¶ 45–47. Lavery also alleges that "[t]housands of

12

additional users suffered gambling losses and did not file suit in time." *Id.* at ¶ 48. These allegations amount to "legal conclusions" and "[t]hreadbare recitals" of the elements of the statute. *Brockett*, 116 F.4th at 685 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Lavery's allegations are therefore insufficient to state a claim under the loss recovery statutes of Illinois, Ohio, Kentucky, and Massachusetts.

Finally, Lavery contends that the statutes provide a "new and independent right" that arises once the loser fails to sue within the required period. Pl.'s Resp. at 11. In Lavery's telling, the right "does not depend on stepping into the loser's shoes." *Id.* But a third party's right to sue under each of the state statutes is dependent on a person losing a thing of value to another person in an illegal gambling transaction. In other words, if there is no underlying illegal gambling transaction that is covered by the statute, there is no claim for a third party to bring.

For these reasons, the Court concludes that Lavery has failed to state a claim under the loss recovery statutes of Illinois, Ohio, Kentucky and Massachusetts. The Court therefore does not address Kalshi's remaining arguments for dismissal.

**Conclusion**

For the reasons stated above, the Court denies Lavery's motion for jurisdictional discovery [dkt. no. 28] and grants Kalshi's motion to dismiss Lavery's complaint [dkt. no. 25]. Unless Lavery files, by July 27, 2026, a motion to amend attaching a proposed amended complaint including at least one viable claim over which the Court has jurisdiction, the Court will enter judgment against him. The telephonic status hearing set for July 14, 2026 is vacated and reset to August 3, 2026 at 9:00 a.m., using call-in

13

number 650-479-3207, access code 2305-915-8729.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 13, 2026