**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARK T. LAVERY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 25 C 14184 |
| | ) |
| KALSHI INC.; | )   Judge Matthew F. Kennelly |
| KALSHIEX LLC; | ) |
| KALSHI TRADING LLC; and | ) |
| KALSHI KLEAR LLC, | ) |
| | ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT**

Plaintiff Mark T. Lavery, for his First Amended Complaint against Defendants Kalshi Inc., KalshiEX LLC, Kalshi Trading LLC, and Kalshi Klear LLC, alleges as follows:

**I.  NATURE OF THE ACTION**

1.  This action seeks recovery under the gambling loss-recovery statutes of Illinois, Massachusetts, Kentucky, and Georgia for money lost by identified and identifiable persons through real-money wagers on sporting outcomes placed from within those states through the platform Defendants operate under the name "Kalshi."

2.  Kalshi calls its venue an exchange and calls the wagers it lists "event contracts." Those labels describe how Kalshi wishes to be regulated. They do not describe what happens on the platform.

3.  A retail customer selects a sporting outcome. He pays money to take that side. If the outcome does not occur, his position resolves at zero and the money he paid is gone. Another participant took the opposite side and receives that money.

1

4. That is a wager, and each of the state statutes invoked herein reaches it.

5. Defendants have divided among affiliated entities the functions a conventional sportsbook performs under one roof.

    a. KalshiEX LLC operates the venue, lists the wagers, accepts customer accounts and deposits, receives and matches orders, and charges fees.

    b. Kalshi Trading LLC participates on that venue as a proprietary trading affiliate and takes positions for its own account opposite retail customers.

    c. Kalshi Klear LLC clears and settles the resulting transfers of value and records who received what.

    d. Kalshi Inc. owns, controls, brands, promotes, and captures the economic return of the enterprise as a whole.

6. The division of labor does not change the nature or essence of the underlying transactions. It changes only which affiliate's ledger records the money.

7. Plaintiff did not place any of the wagers described in this complaint. He sues as a third person under statutes that permit any person to recover a gambling loss when the losing participant has not sued the winner within the statutory period.

8. Plaintiff does not seek to recover any loss that has been refunded, settled, recovered, or timely placed at issue by the losing participant in another proceeding.

9. All four states' claims arise from a single instrumentality and a single course of conduct: one continuously operated order book, one matching engine, one clearing entity, one proprietary trading affiliate, one set of transaction records, and one decision to accept orders from every state without geographic restriction. There is one "pit," not four.

## II.   PARTIES

10.   Plaintiff Mark T. Lavery is a citizen and domiciliary of the State of Illinois.

11.   Plaintiff did not personally enter any of the transactions described in this complaint and has no interest in any of them other than the statutory right he asserts here.

12.   Defendant Kalshi Inc. is a Delaware corporation with its principal place of business in New York, New York.

13.   Kalshi Inc. is the direct or indirect parent of KalshiEX LLC, Kalshi Trading LLC, and Kalshi Klear LLC.

14.   Kalshi Inc. appoints the directors of KalshiEX LLC and may remove any director in its sole discretion. Based on representations made to Plaintiff's counsel by Defendants' counsel, none of the members of KalshiEX LLC are domiciled in, or citizens of Illinois.

15.   Kalshi Inc.'s chief executive officer is also the chief executive officer of KalshiEX LLC.

16.   KalshiEX LLC may not materially change the nature of its business, and may not hire, terminate, or change the compensation of any executive officer, without Kalshi Inc.'s approval.

17.   On April 6, 2026, Kalshi Inc. appeared before the Illinois Senate Subcommittee on Gaming, Wagering and Racing and submitted written testimony on behalf of KalshiEX LLC opposing proposed Illinois legislation directed at the platform.

18.   Kalshi Inc.'s public privacy policy defines KalshiEX LLC "and its parent, subsidiaries, or affiliates" collectively as "the Exchange," "Kalshi," "we," "our," and "us."

19.   Defendants hold themselves out to the public, and to their customers in each of the four states at issue, as one enterprise operating under one name.

20. Defendant KalshiEX LLC is a Delaware limited liability company. On information and belief, its sole member is Kalshi Inc.

21. KalshiEX LLC operates the venue on which the wagers at issue are listed and matched.

22. KalshiEX LLC accepts customer accounts and deposits, receives customer orders, operates the electronic matching system, records completed transactions, charges transaction fees, and maintains customer-identification, address, banking, internet-protocol, device, geolocation, order, matching, trade-confirmation, and account-ledger records for every transaction described in this complaint.

23. Defendant Kalshi Trading LLC is a Delaware limited liability company. On information and belief, its sole member is Kalshi Inc.

24. Kalshi Trading LLC participates on the KalshiEX venue as a proprietary trading affiliate and takes event-contract positions for its own account opposite retail customers.

25. When Kalshi Trading LLC holds the successful position opposite a losing retail customer, Kalshi Trading LLC receives the money that customer paid and lost. As to that transaction, Kalshi Trading LLC is the winner within the meaning of each statute invoked in this complaint.

26. On information and belief, Kalshi Trading LLC is not itself designated by the Commodity Futures Trading Commission as a contract market and is not a registered derivatives clearing organization.

27. Defendant Kalshi Klear LLC is a Delaware limited liability company. On information and belief, its sole member is Kalshi Inc.

4

28.    Kalshi Klear LLC clears and settles the transactions conducted on the KalshiEX venue and maintains or controls the records identifying transaction counterparties, settlement obligations, account credits, account debits, and transfers of value.

29.    With respect to each transaction alleged in this complaint, Defendants acted as a single integrated enterprise. Each Defendant either held the successful position, received or was credited with the losing participant's money, shared in the proceeds of the successful position, or acted as principal or agent of the winner.

30.    Defendants are jointly and severally liable for each loss alleged in this complaint.

## III.    JURISDICTION AND VENUE

### A.    <u>Subject-Matter Jurisdiction</u>

31.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different States and the matter in controversy exceeds $75,000, exclusive of interest and costs.

32.    Plaintiff is a citizen of Illinois.

33.    Kalshi Inc. is a citizen of Delaware and of New York.

34.    A limited liability company is a citizen of every State of which any of its members is a citizen, traced through every layer of ownership.

35.    On information and belief, the sole member of each of KalshiEX LLC, Kalshi Trading LLC, and Kalshi Klear LLC is Kalshi Inc., and each is therefore a citizen of Delaware and of New York.

36.    No Defendant is a citizen of Illinois.

37. Plaintiff is a single plaintiff asserting claims against Defendants who are jointly liable for each loss alleged. His claims may therefore be aggregated for purposes of the amount in controversy.

38. The four statutes invoked prescribe the following recoveries:

a. Illinois: upon determination of the amount lost, "the court shall enter a judgment of triple the amount so determined." 720 ILCS 5/28-8(b).

b. Massachusetts: "any other person may sue for and recover in tort treble the value thereof." Mass. Gen. Laws ch. 137, § 1.

c. Kentucky: any other person may recover treble the value of the money or thing lost. KRS 372.040.

d. Georgia: any person may recover the money paid or property delivered, within four years, "for the joint use of himself and the educational fund of the county." O.C.G.A. § 13-8-3(b).

39. Publicly reported data show that retail users lost approximately $117 million through Kalshi parlay transactions between January 1 and April 30, 2026.

40. That figure reflects realized user losses. It is not gross trading volume and not amounts temporarily committed to open positions.

41. The reported figure covers a single category of sports-event transaction over a four-month period. It excludes single-game contracts, moneyline contracts, point-spread contracts, totals, proposition contracts, player-performance contracts, and every other category of contract listed on the platform.

42. Separately reported public data describe billions of dollars in Kalshi sports-event trading volume across millions of individual transactions.

6

43. Throughout the relevant period Defendants accepted orders originating in Illinois, Massachusetts, Kentucky, and Georgia and did not geofence any of those States.

44. On information and belief, the qualifying, matured, and unrecovered losses of the participants identified in this complaint and of the additional participants recorded in Defendants' books exceed $75,000 in the aggregate.

45. Trebled under the Illinois, Massachusetts, and Kentucky statutes, those losses place well more than $75,000 in controversy, exclusive of interest and costs. Plaintiff does not rely on the Georgia claim to satisfy the amount in controversy.

46. It is not a legal certainty that Plaintiff's recovery will fall below the jurisdictional threshold. **And regardless, Plaintiff also asserts federal question jurisdiction pursuant to the Grable doctrine, 545 U.S. 308 because the issue of federal preemption has been and will be asserted by Defendants and is necessarily raised, actually disputed, substantial, and resolvable in federal court without disturbing the federal-state court balance**

47. The exact allocation of losses among the four States is recorded in Defendants' customer-address, know-your-customer, internet-protocol, device, geolocation, order-entry, matching, clearing, and settlement records.

### B. Personal Jurisdiction

48. This Court has specific personal jurisdiction over each Defendant with respect to the Illinois claims, and pendent personal jurisdiction over each Defendant with respect to the Massachusetts, Kentucky, and Georgia claims.

49. KalshiEX LLC accepted customer accounts from Illinois residents, accepted deposits from Illinois residents, received orders transmitted from within Illinois, matched those orders, issued transaction confirmations, charged fees on those transactions, and caused them to be cleared and settled.

50. Section VI of this complaint identifies specific Illinois residents, specific completed Illinois transactions, and specific losses arising from them. Plaintiff does not rest on the accessibility of a website in Illinois.

51. Defendants made an affirmative decision not to restrict access from Illinois. That decision was made and maintained after Illinois regulators and legislators publicly took the position that the platform's sports-event wagering was unlawful in Illinois.

52. Kalshi Inc. appeared before the Illinois Senate Subcommittee on Gaming, Wagering and Racing to preserve the enterprise's ability to continue accepting orders from Illinois residents. That is purposeful availment of the Illinois market, and the transactions at issue are precisely what Kalshi Inc. appeared to protect.

53. Kalshi Trading LLC purposefully took positions on the other side of transactions entered by Illinois residents and received the money those residents lost.

54. Kalshi Klear LLC cleared and settled the Illinois transactions and credited or debited the resulting accounts.

55. Kalshi Inc. directed, controlled, branded, promoted, and economically participated in the Illinois transactions.

56. Because this Court has personal jurisdiction over each Defendant on the Illinois claims, it may exercise pendent personal jurisdiction over the Massachusetts, Kentucky, and Georgia claims against the same Defendants, which arise from a common nucleus of operative fact.

57. The four States' claims are not four separate courses of conduct. They arise from one venue, one order book, one matching engine, one clearing entity, one proprietary trading

8

affiliate, one rulebook, one contract-listing decision, and one decision to accept orders nationwide without geographic restriction.

58.     The proof of each State's claim is the same proof: the same corporate structure, the same market design, the same records systems, the same custodians, and the same witnesses.

59.     Adjudicating the out-of-state claims requires Defendants to defend nothing different in kind from what they must defend on the Illinois claims.

60.     The exercise of jurisdiction comports with traditional notions of fair play and substantial justice. Defendants operate a national business, have appeared and litigated in this District, and would bear no meaningful additional burden from adjudication of claims that turn on the same evidence already before this Court.

### C.     Venue

61.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims — including the Illinois transactions identified in Section VI — occurred in this District.

## IV.     DEFENDANTS' CONDUCT

62.     Defendants describe their venue as an exchange and the wagers listed on it as derivative contracts. The comparison to a commodity market is Defendants' own. It does not survive scrutiny.

### A.     **What Happens in a Commodity Pit**

63.     A commercial participant comes to the pit because he already bears a risk. A grain elevator holds wheat it has not sold. A miller must buy wheat it has not yet purchased. An exporter has committed to deliver at a fixed price.

9

64. The risk exists before the participant arrives at the ring. The pit does not create it. The pit permits it to be transferred to someone willing to bear it.

65. Locals in the pit trade for their own account. They supply the immediacy that allows a hedger to transfer risk at the moment he needs to transfer it, and they are compensated for standing ready to do so.

66. Brokers in the pit transmit and execute the orders of customers who are not present.

67. The exchange furnishes the ring, the rules, the recordkeeping, and the clearing guarantee, and charges a fee for doing so.

68. The contracts traded in the pit are referenced to commodities and financial instruments that exist in the world, that are capable of delivery, and whose prices the pit discovers for the benefit of a cash market that uses those prices to value inventory, price forward sales, and manage commercial exposure.

69. A hedger who loses money on a futures position has not lost a wager. He has paid the cost of insurance against a risk he already carried. A local who profits on the other side has not won a bet. He has been paid for bearing a risk that already existed and that someone needed to shed.

**B.      Kalshi's Sports-Event Market Performs None of Those Functions**

70. No participant in a Kalshi sports-event market has any antecedent exposure to whether a football team covers a point spread, whether a golfer wins a tournament, or whether a player exceeds a statistical threshold.

71. The risk does not exist before the customer arrives. The customer's payment creates it. That is the definition of a wager and the precise opposite of a hedge.

10

72. Nothing is capable of delivery. A sports-event contract cannot be settled by tendering anything. It resolves to one dollar or to zero according to the outcome of an athletic contest.

73. There is no cash market whose participants use Kalshi's sports-event prices to value inventory, price a forward sale, or manage a commercial exposure. Those prices serve no function outside the wagers themselves.

74. Kalshi's sports-event contracts are referenced to the identical outcomes on which licensed sportsbooks accept wagers: game winners, point spreads, totals, player statistics, parlays, and proposition outcomes.

75. Kalshi markets those contracts to retail sports bettors. It does not market them to commercial hedgers, and no commercial hedger has any use for them.

76. Kalshi's customers describe their positions as bets. So do Kalshi's own former employees. So does the co-founder of DraftKings, who publicly described his own Kalshi position as a bet.

77. A venue that lists no commodity, delivers nothing, hedges nothing, and discovers no price that any cash market uses is not a commodity market. Nothing about it moves risk from a person who bears it to a person willing to carry it.

78. It is a "pit" built for one purpose: to host wagers on athletic contests and to move the losers' money to the winners.

C. **Who Receives the Losing Participant's Money**

79. Kalshi Trading LLC takes positions for its own account opposite retail customers and, when its position is the successful one, receives the money the retail customer lost.

11

80. Kalshi Trading LLC is under common ownership and common control with the venue on which it trades. It does not participate as an independent trader would. It is the house's own book, operated one entity removed from the house.

81. A bookmaker does not stop being a bookmaker by separately incorporating the side of the transaction that wins.

82. KalshiEX LLC separately charges and retains a fee out of the money that losing participants pay and deliver in connection with each transaction.

83. To the extent of the fees so retained, KalshiEX LLC received money lost by the losing participant and is a winner within the meaning of each statute invoked in this complaint.

**D.      Every Winner Here Is a Determinate, Recorded Person**

84. In an open-outcry pit, the trader on the other side of a transaction is a known person. The match is observed, recorded, and guaranteed by the clearinghouse.

85. Kalshi's electronic order book is no different in this respect. Every matched wager has an identified counterparty on the other side.

86. KalshiEX LLC's matching engine records, for every transaction, the identity of each participant, the physical location from which each order was submitted, the date and time, the amount paid, the amount returned, and the realized loss.

87. Kalshi Klear LLC's clearing and settlement records identify which participant received the losing participant's money.

88. The winner in each transaction alleged in this complaint is therefore not an abstraction. The winner is a specific person whose identity is written down in Defendants' books.

89. The identity of every losing participant and every winner alleged in this complaint is presently within Defendants' exclusive possession.

## V.  THE TRANSACTIONS

90.  Kalshi lists binary contracts whose payout depends on whether a specified future event occurs.

91.  A retail user pays money to acquire a "yes" or "no" position. The position has value only if the selected outcome occurs, or if the user can sell it to another participant before resolution.

92.  If the selected outcome does not occur, the position expires at zero and the money paid is lost.

93.  The participant holding the successful opposite position receives the corresponding value, net of fees and settlement mechanics.

94.  The retail customer acquires no ownership interest in a productive enterprise. He lends no capital. He receives no dividend. He hedges no preexisting commercial risk.

95.  He risks money on a contingent sporting outcome for the chance to receive more money.

96.  The use of the words "exchange," "trade," "contract," "yes," and "no" does not change what he did.

97.  DraftKings performs substantially the same economic activity using conventional sportsbook terminology. It accepts sports wagers, pays winning customers, retains losing wagers, and reports its hold as revenue.

98.  Kalshi performs the same activity with the functions divided among an exchange operator, a clearing entity, an affiliated proprietary trader, and other market participants.

99.  From the retail customer's side of the transaction, nothing distinguishes the two. Money is risked on an uncertain sporting outcome, and the customer wins or loses according to the result.

13

A.      "The Fish Are the Product"

100.    Adhi Rajaprabhakaran is a former Kalshi employee and trader with direct knowledge of the platform's structure.

101.    Rajaprabhakaran published a public analysis titled "The Fish Are the Product."

102.    In gambling markets, "fish" describes recreational, inexperienced, or disadvantaged participants who repeatedly lose to more sophisticated participants or to the house.

103.    Rajaprabhakaran explained that recreational bettors are the product monetized through Kalshi's sports-event markets, and that in parlay markets in particular those recreational bettors are generally the takers — the participants willing to accept economically unfavorable prices in order to obtain immediate exposure to a desired sporting outcome.

104.    Professional market makers and sophisticated counterparties occupy the economically advantaged side of those transactions.

105.    Rajaprabhakaran compared Kalshi directly to DraftKings. He explained that DraftKings' reported hold of approximately eight percent reflects the sportsbook's share of a systematic transfer of wealth from recreational bettors to the house.

106.    He explained that Kalshi's reported fee revenue of approximately one percent is only Kalshi's toll for facilitating a substantially larger transfer of the same kind.

107.    Rajaprabhakaran's disclosure establishes that KalshiEX LLC's reported fee revenue does not measure the money retail customers lose on the platform.

108.    The remainder of the economic hold is transferred from recreational users to the successful counterparties, including Kalshi Trading LLC.

109.    The statutory loss in each of the four States is the amount the losing participant lost, not the fee KalshiEX LLC retained.

14

110. Defendants' corporate structure makes that transfer less visible in any single entity's reported revenue. It does not change the transfer.

## VI. ILLINOIS TRANSACTIONS

### A. Luis Cuevas

111. Luis Cuevas is an Illinois resident domiciled in Chicago, Cook County, Illinois.

112. In a complaint filed January 8, 2026, Cuevas alleged that he began using Kalshi in or about November 2024, that he used the platform while located in Illinois, that he entered real-money transactions on the platform, and that he incurred net losses of several hundred dollars. This supports specific jurisdiction in Illinois over Defendants.

113. Cuevas transacted on the platform from within Illinois over a period of approximately fourteen months before filing his own action.

114. On information and belief, Cuevas incurred at least one qualifying loss exceeding $50, in a single transaction or in a qualifying series of transactions, before July 8, 2025.

115. The basis for that allegation is Cuevas's own pleading: a start date of November 2024, sustained transaction activity across the intervening period, and alleged net losses of several hundred dollars.

116. Any qualifying loss Cuevas incurred before July 8, 2025 had gone unrecovered for more than six months by January 8, 2026, when he filed his own action.

117. Cuevas did not institute an action against the winner within six months after any such loss.

118. Plaintiff seeks recovery of a Cuevas loss only if the loss occurred before July 8, 2025, Cuevas did not institute an action within six months after it, and the loss is not being recovered in Cuevas's own action.

15

119. Defendants' records identify the date, amount, market, order location, counterparty, and settlement result of every Cuevas transaction.

**B. Temuujin Shaariibuu**

120. Temuujin Shaariibuu is an Illinois resident domiciled in Northbrook, Cook County, Illinois.

121. In a complaint filed January 8, 2026, Shaariibuu alleged that he began using Kalshi in or about November 2024, that he used the platform while located in Illinois, that he entered real-money transactions on the platform, and that he incurred net losses exceeding $50.

122. On information and belief, Shaariibuu incurred one or more qualifying losses exceeding $50 before July 8, 2025.

123. The basis for that allegation is Shaariibuu's own pleading: a start date of November 2024, sustained transaction activity, and alleged losses exceeding $50.

124. Any qualifying loss Shaariibuu incurred before July 8, 2025 had gone unrecovered for more than six months by January 8, 2026, when he filed his own action.

125. Shaariibuu did not institute an action against the winner within six months after any such loss.

126. Plaintiff seeks recovery of a Shaariibuu loss only if the loss occurred before July 8, 2025, Shaariibuu did not institute an action within six months after it, and the loss is not being recovered in Shaariibuu's own action.

127. Defendants' records identify the date, amount, market, order location, counterparty, and settlement result of every Shaariibuu transaction.

### C.  Thomas Stephens

128.  Thomas Stephens is a sports bettor who publicly associates himself with Chicago, Illinois, and who used the public account designation @t_stephens97.

129.  Stephens publicly described his use of Kalshi's portfolio feature to follow multiple simultaneous sports positions, and expressly described those positions as "bets."

130.  Stephens described the feature as his preferred way to follow NFL Sundays, indicating recurring use of the platform across the 2025 NFL season.

131.  On information and belief, Stephens maintained a funded Kalshi account and submitted one or more orders while physically located in Illinois. The basis for that allegation is his public Chicago association, his description of recurring use during NFL Sundays, and Defendants' acceptance of orders originating in Illinois throughout that period.

132.  On information and belief, Stephens lost $50 or more on at least one transaction or qualifying series of transactions. The basis for that allegation is his disclosure of multiple concurrently held positions and the binary structure under which an unsuccessful position loses the entire amount paid to acquire it.

133.  NFL event contracts resolve on the day of, or shortly after, the underlying game.

134.  On information and belief, at least one Stephens position resolved unsuccessfully no later than December 2025.

135.  More than six months elapsed between that loss and the filing of this amended complaint.

136.  Plaintiff searched publicly available court records and located no action filed by Stephens to recover Kalshi gambling losses.

137.    On information and belief, Stephens did not institute an action against the winner within six months after the loss.

## VII.    MASSACHUSETTS TRANSACTIONS

138.    Kalshi is not licensed as a gaming establishment under Mass. Gen. Laws ch. 23K and is not licensed to conduct sports wagering under Mass. Gen. Laws ch. 23N. The exception in Mass. Gen. Laws ch. 137, § 1 for licensed gaming and licensed sports wagering therefore does not apply to any transaction alleged here.

139.    A Massachusetts governmental enforcement proceeding has alleged that Defendants offered unlicensed sports wagering to persons located in Massachusetts.

140.    Those allegations support the inference that Massachusetts residents funded accounts, transmitted orders from Massachusetts, entered completed transactions, and lost money.

### A.    The User Identified as No-Passion52

141.    In or about January 2026, a user posting under the designation No-Passion52 publicly stated that the user had been betting on Kalshi while under twenty-one years of age.

142.    The statement was made in a Massachusetts-focused discussion concerning whether Kalshi permitted the user to wager notwithstanding the user's age.

143.    On information and belief, No-Passion52 is a Massachusetts resident who entered one or more Kalshi transactions while physically located in Massachusetts.

144.    On information and belief, No-Passion52 paid money to acquire one or more sports-event positions and suffered at least one realized loss.

145.    Any such loss occurring in or before January 2026 had gone unrecovered for more than three months before the filing of this amended complaint.

18

146. Plaintiff located no action filed by No-Passion52 to recover the loss, and on information and belief no such action was prosecuted with effect within three months.

147. Defendants' age-verification, customer-account, geolocation, order, matching, clearing, and settlement records identify this user, the transaction, the amount lost, and the recipient of the losing consideration.

**B. Matt Kalish**

148. Matt Kalish is a co-founder of DraftKings and an experienced sports-wagering executive with longstanding business and professional connections to Massachusetts.

149. In May 2026, Kalish publicly disclosed a real-money Kalshi transaction concerning Brooks Koepka and the 2026 PGA Championship, and publicly characterized that transaction as a bet.

150. On information and belief, Kalish funded and completed one or more Kalshi event-contract transactions concerning the 2026 PGA Championship while physically located in Massachusetts.

151. On information and belief, one or more of those positions settled or were closed at a realized monetary loss.

152. Plaintiff does not allege that unfavorable quoted prices, slippage, or diminished expected value alone constitutes a recoverable loss. Plaintiff seeks only money actually paid or delivered and actually lost.

153. Plaintiff seeks recovery as to Kalish only for a transaction whose three-month statutory period expired before this amended complaint was filed.

19

154. Defendants' banking, device, internet-protocol, geolocation, order, matching, clearing, and settlement records identify the location, amount paid, realized loss, and recipient for each such transaction.

## VIII. KENTUCKY TRANSACTIONS

155. The Attorney General of the Commonwealth of Kentucky has filed an action alleging that Kalshi and affiliated entities offered unlicensed sports-event wagering to persons located in Kentucky.

156. The Commonwealth has alleged that Defendants accepted Kentucky transactions involving game winners, point spreads, player statistics, totals, parlays, and proposition outcomes.

157. Those allegations support the inference that Kentucky residents funded accounts, transmitted orders from Kentucky, entered completed transactions, and lost money.

158. A separate Kentucky action has alleged Kentucky use of the platform and losses by Kentucky users.

159. Donovan Roberts is an identified Kentucky resident who has alleged that he personally used Kalshi while located in Kentucky and suffered gambling losses.

160. Because Roberts has pursued his own claim, Plaintiff does not seek recovery of any Roberts loss. Plaintiff relies on Roberts's allegations solely as corroboration that Kentucky residents entered completed transactions and lost money on the platform.

161. On information and belief, additional Kentucky residents entered Kalshi sports-event transactions while physically located in Kentucky.

162. On information and belief, at least one such resident lost more than $5 at one time or within a twenty-four-hour period.

163. On information and belief, at least one such Kentucky participant did not sue the winner within six months after the loss.

164. Defendants' customer-identification, address, banking, device, geolocation, order, matching, clearing, and settlement records identify those Kentucky participants and transactions.

## IX. GEORGIA TRANSACTIONS

165. Under Georgia law a gambling-loss claim exists where the gaming contract is made or the bet is laid within Georgia, without regard to where the winner or the money is located.

166. In or about March 2026, a user posting under the designation Necessary-Pea4522 publicly stated that the user lived in Georgia and had lost approximately $350 to $400 on Kalshi during the preceding year, and clarified that "Georgia" meant the State of Georgia.

167. Because the statement was made in 2026 and referred to losses during the preceding year, it identifies losses incurred during calendar year 2025.

168. On information and belief, Necessary-Pea4522 entered one or more of the disclosed transactions while physically located in Georgia. The basis for that allegation is the user's express statement of Georgia residence during the loss period and the absence of any indication that the transactions occurred elsewhere.

169. The aggregate disclosed losses of approximately $350 to $400 substantially exceed any applicable threshold.

170. Every disclosed 2025 loss occurred no later than December 31, 2025, and had gone unrecovered for more than six months as of June 30, 2026.

171. Plaintiff located no action filed by Necessary-Pea4522 to recover the disclosed losses, and on information and belief the user did not sue the winner within six months.

172. This action is brought within four years after the losses were incurred, as O.C.G.A. § 13-8-3(b) requires.

173. A separate Georgia gambling-recovery action alleges that Defendants accepted and processed event-contract transactions involving Georgia residents.

174. Defendants' address, banking, device, internet-protocol, geolocation, order, matching, clearing, and settlement records identify the location of each order and the recipient of each losing participant's money.

## X. ADDITIONAL LOSING PARTICIPANTS IN DEFENDANTS' CONTROL

175. Defendants require every user to establish an account and supply identifying information before entering a real-money transaction.

176. Defendants therefore possess the name, address, date of birth, banking information, account identifier, and complete transaction history of every participant who lost money on the platform.

177. Defendants also possess internet-protocol, device, and geolocation information identifying the State from which each order was submitted.

178. For each transaction, Defendants' records show:

   a.   the identity of the losing participant;

   b.   the physical location from which the order was submitted;

   c.   the date and time of the transaction;

   d.   the amount paid or risked;

   e.   the amount returned, if any, and the realized loss;

   f.   the date the contract resolved or the position was closed;

   g.   the identity of the successful counterparty;

22

h.      the amount received or credited to each Defendant; and

i.      whether the participant received a refund or other adjustment.

179.    Given the volume of sports-event transactions Defendants processed from Illinois, Massachusetts, Kentucky, and Georgia during the relevant period, and the more than $117 million in publicly reported retail parlay losses over a single four-month window, it is not merely possible but probable that participants in each of those States suffered qualifying losses exceeding the applicable statutory threshold that remained unrecovered after the applicable statutory period expired.

180.    The participants identified by name in Sections VI through IX are not outliers. They are the participants whose losses happened to become public.

181.    Plaintiff is unable to name the remaining participants before discovery solely because Defendants control the records that identify them.

182.    Plaintiff will seek leave to amend to substitute the identities and transaction details of those participants once Defendants produce the records identifying them.

183.    Plaintiff does not seek recovery on account of any participant whose loss has been refunded, settled, recovered, or timely placed at issue by that participant in another proceeding.

## COUNT I
## ILLINOIS — RECOVERY OF GAMBLING LOSSES
### 720 ILCS 5/28-8
### (All Defendants)

184.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

185.    Luis Cuevas, Temuujin Shaariibuu, and Thomas Stephens each entered real-money sports-event transactions on Defendants' platform while physically located in Illinois.

186.    Those transactions constituted gambling under Illinois law because each participant risked money on an uncertain sporting outcome for the chance to obtain additional money.

187. Each of those participants lost and paid or delivered money or a thing of value amounting to $50 or more.

188. Additional Illinois participants recorded in Defendants' books likewise lost and paid or delivered $50 or more in qualifying transactions.

189. Kalshi Trading LLC held, received, or was credited with the successful position opposite one or more of those losing participants, and is a winner under 720 ILCS 5/28-8.

190. KalshiEX LLC received and retained a portion of the money those participants lost in the form of transaction fees, and is a winner to that extent.

191. KalshiEX LLC, Kalshi Klear LLC, and Kalshi Inc. each received, retained, or shared the losing participants' money, or acted as principal or agent of the winner, and are liable jointly and severally.

192. Each losing participant failed to institute an action against the winner within six months after the loss.

193. Plaintiff is therefore entitled under 720 ILCS 5/28-8(b) to initiate this action, and upon determination of the amount lost, to a judgment of triple that amount.

**COUNT II**
**MASSACHUSETTS — RECOVERY OF GAMBLING LOSSES**
**MASS. GEN. LAWS ch. 137, § 1**
**(All Defendants)**

194. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

195. The participant identified as No-Passion52 and, on information and belief, Matt Kalish each entered real-money sports-event wagers on Defendants' platform while physically located in Massachusetts.

196. Additional Massachusetts participants recorded in Defendants' books likewise entered such wagers while physically located in Massachusetts.

24

197. Each such participant paid or delivered money to the winner and actually lost it.

198. Defendants are not licensed under Mass. Gen. Laws ch. 23K or ch. 23N, and the statutory exception for licensed gaming and licensed sports wagering does not apply.

199. Kalshi Trading LLC held or received the successful position opposite one or more of those losing participants and is a winner under Mass. Gen. Laws ch. 137, § 1.

200. KalshiEX LLC, Kalshi Klear LLC, and Kalshi Inc. each received, retained, or shared the losing participants' money, or acted as principal or agent of the winner, and are liable jointly and severally.

201. No such participant prosecuted an action with effect within three months after the loss, payment, or delivery.

202. Plaintiff is therefore entitled to recover in tort treble the value of each qualifying Massachusetts loss.

## COUNT III
## KENTUCKY — RECOVERY OF GAMBLING LOSSES
### KRS 372.020 AND 372.040
### (All Defendants)

203. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

204. One or more Kentucky residents entered real-money sports-event wagers on Defendants' platform while physically located in Kentucky.

205. On information and belief, at least one such participant lost and paid or delivered more than $5 at one time or within a twenty-four-hour period.

206. Kalshi Trading LLC held or received the successful position opposite one or more of those losing participants and is a winner under KRS 372.020.

207. KalshiEX LLC, Kalshi Klear LLC, and Kalshi Inc. each received, retained, or shared the losing participants' money, or acted as principal or agent of the winner, and are liable jointly and severally.

208. No such participant sued and prosecuted an action with due diligence within six months after the payment or delivery.

209. Plaintiff does not seek recovery of any loss asserted or recovered by Donovan Roberts, by the Commonwealth, or by any other person with a timely or superior claim.

210. Plaintiff is therefore entitled under KRS 372.040 to recover treble the value of each qualifying Kentucky loss.

## COUNT IV
## GEORGIA — RECOVERY OF GAMBLING LOSSES
### O.C.G.A. § 13-8-3
### (All Defendants)

211. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

212. The participant identified as Necessary-Pea4522 entered real-money sports-event wagers on Defendants' platform while physically located in Georgia and paid or delivered approximately $350 to $400 that was lost during calendar year 2025.

213. Additional Georgia participants recorded in Defendants' books likewise paid or delivered money on a gambling consideration while physically located in Georgia.

214. The gaming contracts were made and the bets were laid in Georgia.

215. Kalshi Trading LLC held or received the successful position opposite one or more of those losing participants and is a winner under O.C.G.A. § 13-8-3(b).

216. KalshiEX LLC, Kalshi Klear LLC, and Kalshi Inc. each received, retained, or shared the losing participants' money, or acted as principal or agent of the winner, and are liable jointly and severally.

26

217. No such participant instituted an action to recover the money within six months after the loss.

218. This action is brought within four years after each qualifying Georgia loss.

219. Plaintiff is therefore entitled to recover the money paid or property delivered upon a gambling consideration, for the joint use of Plaintiff and the educational fund of the county.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mark T. Lavery respectfully requests that this Court enter judgment in his favor and against Defendants Kalshi Inc., KalshiEX LLC, Kalshi Trading LLC, and Kalshi Klear LLC, jointly and severally, and:

A. On Count I, determine the amount lost by each qualifying Illinois participant and enter judgment for triple that amount under 720 ILCS 5/28-8(b);

B. On Count II, award treble the value of each qualifying Massachusetts loss under Mass. Gen. Laws ch. 137, § 1;

C. On Count III, award treble the value of each qualifying Kentucky loss under KRS 372.040;

D. On Count IV, award the money paid or property delivered in each qualifying Georgia transaction, for the joint use of Plaintiff and the educational fund of the county, under O.C.G.A. § 13-8-3(b);

E. Award Plaintiff his costs of suit and any lawful prejudgment and post-judgment interest;

F. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

27

Dated: July 27, 2026

Respectfully submitted,

**MARK T. LAVERY, Plaintiff**

By: /s/ Christopher V. Langone
    One of his attorneys

Christopher V. Langone
LANGONE LAW LLC
205 N. Michigan Avenue, Suite 810
Chicago, Illinois 60601
(312) 720-9191
chris@langonelaw.com